**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE APPLICATION OF ACHIM                   :
KRAEMER                                       :
                                              :          Misc. Case No.
               Petitioner,                    :
                                              :
                                              :
for an order pursuant to 28 U.S.C. § 1782 to  :
conduct discovery for use in foreign          :
proceedings.                                  :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<br/>

**MEMORANDUM OF LAW IN SUPPORT OF**
***EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO**
**CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

Richard F. Albert
Stephen Ehrlich
MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 2

I.      The Euribor ................................................................................................................ 2

II.     The Alleged Conspiracy ........................................................................................... 2

III.    The Requested Discovery ........................................................................................ 3

ARGUMENT ........................................................................................................................... 4

I.      Mr. Kraemer Satisfies the Statutory Requirement of 28 U.S.C. § 1782 ............................. 6

II.     The Court Should Exercise its Discretion to Grant the Discovery Sought ......................... 7

III.    The Court Should Grant Mr. Kraemer's Application *Ex Parte* ........................................ 10

CONCLUSION ...................................................................................................................... 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brandi–Dohrn v. IKB Deutsche Industriebank AG,*
    673 F.3d 76 (2d Cir. 2012).......................................................................................... 5, 6

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.,*
    798 F.3d 113 (2d Cir. 2015)............................................................................................. 6

*Daimler AG v. Bauman,*
    134 S. Ct. 746 (2014)..................................................................................................... 6

*Euromepa S.A. v. R. Esmerian, Inc.,*
    51 F.3d 1095 (2d Cir. 1995)........................................................................................... 8

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011)........................................................................................................ 6

*Gushlak v. Gushlak,*
    486 F. App'x 215 (2d Cir. 2012) .................................................................................. 10

*In re Application of Chevron Corp.,*
    709 F. Supp. 2d 283 (S.D.N.Y. 2010)......................................................................... 10

*In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign*
*Proceeding,*
    2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ............................................................... 8

*In re Asia Mar. Pac. Ltd.,*
    253 F. Supp. 3d 701 (S.D.N.Y. 2015)............................................................................ 5

*In re Edelman,*
    295 F.3d 171 (2d Cir. 2002)........................................................................................... 7

*In re Hornbeam Corp.,*
    2018 WL 416486 (2d Cir. Jan. 16, 2018) ................................................................... 10

*In re Kiobel,*
    2017 WL 354183 (S.D.N.Y. Jan. 24, 2017) ................................................................. 8

*In re O'Keeffe,*
    650 F. App'x 83, 85 (2d Cir. 2016) ............................................................................. 10

*In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuan*
*to 28 U.S.C. sec. 1782*,
   110 F. Supp. 3d 512 (S.D.N.Y. 2015) ........................................................................ 6

*In re Sargeant*,
   2017 WL 4512366 (S.D.N.Y. Oct. 10, 2017) ........................................................... 10

*In re Servicio Pan Americano de Proteccion*,
   354 F. Supp. 2d 269 (S.D.N.Y. 2004) ..................................................................... 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ............................................................................................ 5, 7, 8

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) ................................................................................ 5, 7, 9

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*,
   376 F.3d 79 (2d Cir. 2004) .......................................................................................... 5

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016) ....................................................................................... 6

## <u>Statutes</u>

28 U.S.C. § 1782 ................................................................................................... 1, 4-11

Petitioner Achim Kraemer ("Mr. Kraemer") respectfully submits this memorandum in support of his *ex parte* application for an order, pursuant to 28 U.S.C. § 1782, to conduct discovery for use in foreign proceedings.

## PRELIMINARY STATEMENT

In *The Queen v. Achim Kraemer*, Petitioner Achim Kraemer—an employee of Deutsche Bank—is charged in the United Kingdom with one count of conspiracy to defraud, based on allegations that he and others agreed to illegally manipulate the Euro Interbank Offered Rate ("Euribor"). The most significant evidence against Mr. Kraemer is his alleged presence in online Bloomberg "chatrooms" during which the manipulation of the Euribor purportedly was discussed. However, rather than actively engaging in these Bloomberg chats, Mr. Kraemer was merely identified as "logged into" the chats, without any indication he even glanced at the discussions that form the heart of the Crown prosecution's conspiracy charge.

Mr. Kraemer now seeks limited discovery—testimony from one or more persons at a Manhattan-headquartered company, Bloomberg L.P.—for use in *The Queen v. Achim Kraemer*. This testimony is sought to explore, for example, how a user might have logged into a chat from more than one terminal, what determines whose name appears as "logged into" the chat, whether or not it is possible to determine who initially set up the chat, and whether a user had to take any positive action to join the chat. This information is highly relevant, minimally intrusive, and necessary to refute the conspiracy charge against Mr. Kraemer in the U.K.

## **BACKGROUND**

### I.     **The Euribor**

The Euribor is a reference rate expressing the average interest rate at which Eurozone banks offer unsecured loans to each other.  Analogous to the London Interbank Offered Rate ("Libor") used by banks around the world, Euribor serves as an important benchmark for a range of euro-denominated financial products, including mortgages, bonds, savings accounts, and derivatives.  (*See* Declaration of Ian Ryan, dated February 9, 2018 ("Ryan Decl.") ¶ 7.)

The Euribor is determined by submissions from "Panel Banks".  Each Panel Bank provides daily quotes of the rate that it believes one prime bank is quoting to another prime bank for interbank term deposits within the Eurozone.  (Ryan Decl. ¶ 8.)  Panel Banks must submit their quotes to a trade association[1] every business day by 10:45 a.m.  The trade association then eliminates the highest and lowest 15% of quotes, averages the remaining quotes, rounds the resulting rate to three decimal places, and publishes this rate as the Euribor.  (*See* Ryan Decl. ¶ 9.)

### II.     **The Alleged Conspiracy**

The prosecution alleges a conspiracy from 2005 to 2009 between traders at several banks —who bought and sold interest-rate products linked to the Euribor—and the banks' respective submitters—who calculated and entered rate quotes in the Euribor system.  (Ryan Decl. ¶ 10.) The primary alleged conspirators were Christian Bittar, a derivatives trader at Deutsche Bank in London, and Philippe Moryoussef, a derivatives trader at Barclays Capital in London.  (Ryan Decl. ¶ 10.)  These alleged coconspirators, former co-workers who remained friends, purportedly

---

[1] The European Money Markets Institute has calculated the Euribor since 2015.  Prior to 2015, the Euribor was calculated by the European Banking Federation.

agreed with each other to persuade the submitters at their banks to fix the Euribor in a mutually beneficial direction (either high or low, depending on their trading positions), and they recruited individuals at other banks to enhance their chances of success.  (Ryan Decl. ¶ 11.)

During the relevant time period, Mr. Kraemer worked on the Frankfurt Pool Trading Desk at Deutsche Bank, first in Frankfurt, Germany, and later in London, U.K.  (Ryan Decl. ¶ 12.)  The Frankfurt Pool Trading Desk at Deutsche Bank had responsibility for both trading and calculating submissions for the Euribor.   (Ryan Decl. ¶ 12.)

While much of the prosecution's evidence against others consists of documented attempts to allegedly manipulate the Euribor, the prosecution admits that "[t]he case against [Mr. Kraemer] differs from that against the other defendants, in that it is based to a much greater extent on inferences from circumstantial evidence."  (Ryan Decl. ¶ 13.)   The most important evidence against Mr. Kraemer is his alleged presence in online Bloomberg chatrooms during which Bittar and others allegedly conspired to manipulate the Euribor.  (Ryan Decl. ¶ 14.)  Although Mr. Kraemer was identified as "logged into" the Bloomberg chatrooms, there is no evidence that he even glanced at the discussions, let alone actively participated in the conspiracy. (Ryan Decl. ¶ 15; *see e.g.*, Ryan Decl., Ex. B ¶¶ 65, 80.)

Mr. Kraemer vigorously denies the allegations against him, and his trial in *The Queen v. Achim Kraemer* is scheduled to begin on April 9, 2018.

### III.        The Requested Discovery

Mr. Kraemer seeks limited, narrowly-tailored discovery bearing on the prosecution's contention that his alleged "presence" in Bloomberg chatrooms indicates his involvement in the conspiracy.  Specifically, Mr. Kraemer seeks the deposition of one or more Bloomberg employees knowledgeable about the mechanics of how Bloomberg chatrooms operated between 2005 and 2009, including:

- how a user might have logged into a chat from more than one terminal;

- what determines whose name appears as "logged into" the chat;

- whether or not it is possible to determine who initially set up the chat;

- whether a user had to take any positive action to join the chat;

- whether there was any limit on the number of Bloomberg chats a user may have been logged into;

- whether a user could see other users who had logged into the chat and at what time;

- whether users could see the time that each message was sent, and/or by whom;

- whether users would know how many chats other users were logged into; and

- whether or not an "auto-invite" had to be "accepted" for the chat to be joined, or whether joining was automatic.

(Ryan Decl. ¶ 18.)   Accordingly, Mr. Kraemer respectfully requests the Court endorse the Proposed Order annexed to the Petition as Exhibit A, which grants leave, pursuant to 28 U.S.C. § 1782, to serve the subpoena annexed to the Petition as Exhibit B.

## <u>ARGUMENT</u>

Under 28 U.S.C. § 1782, federal courts are empowered to grant discovery in the United States for use in a foreign proceeding.  This statute provides: "The district court of the district in which a person resides or is found may order him to give his testimony or statement . . . for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation."  28 U.S.C. § 1782(a).  Such an order may be issued "upon the application of any interested person."  *Id.*  The twin aims of this provision are to "provid[e] efficient means of assistance to participants in international litigation in our federal courts and

4

encourag[e] foreign countries by example to provide similar means of assistance to our courts." *Mees v. Buiter*, 793 F.3d 291, 297–98 (2d Cir. 2015) (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004)).

The Second Circuit imposes a two-step process for determining whether a § 1782 application should be granted.  First, a petitioner must meet three statutory requirements of § 1782: (1) the person from whom discovery is sought must reside (or be found) in the district of the district court to which the application is made, (2) the discovery must be for use in a foreign proceeding before a foreign tribunal, and (3) the application must be made by a foreign or international tribunal or any interested person.  *Id.* at 297 (citing *Brandi–Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 80 (2d Cir. 2012)).

Second, if those statutory requirements are met, the district court may grant the requested discovery in its discretion by examining factors such as: (a) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (b) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (c) "whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (d) whether the request is "unduly intrusive or burdensome." *Id.* at 298 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244 (2004)); *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 704 (S.D.N.Y. 2015).

Here, the statutory requirements are satisfied and the discretionary factors all weigh heavily in favor of granting Mr. Kraemer's requested discovery.  Moreover, Bloomberg L.P. will

have an opportunity to challenge the subpoena once it is served, and therefore it will not be prejudiced if Mr. Kraemer's application for the requested subpoena is heard *ex parte*.

## I.    Mr. Kraemer Satisfies the Statutory Requirement of 28 U.S.C. § 1782

As noted above, a court may grant a discovery request under § 1782 when three statutory criteria are met: (1) "the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made," (2) "the discovery [is] for use in a proceeding before a foreign tribunal," and (3) "the application [is] made by a foreign or international tribunal or any interested person."  *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (quoting *Brandi–Dohrn,* 673 F.3d at 80).  Mr. Kraemer easily satisfies all three of these requirements.

*First*, Bloomberg L.P. "resides (or is found)" in the Southern District of New York for the purposes of § 1782.  Bloomberg L.P. is a limited partnership incorporated in Delaware with its principal place of business, and national headquarters, at 731 Lexington Avenue, New York, NY 10022.  (Ryan Decl., Ex. C.)  Thus, the Court has general jurisdiction over Bloomberg L.P because its affiliation with the Southern District of New York is so continuous and systematic that it is essentially at home in the District.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) ("[A] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State."); *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) (applying the general jurisdiction test of *Daimler* to all "entities" rather than corporations).  And where, as here, an entity is subject to the general jurisdiction of the Court, the entity also "resides (or is found)" in the District for the purposes of § 1782.  *In re Republic of Kazakhstan for an Order Directing*

*Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, 110 F. Supp. 3d 512, 515 (S.D.N.Y. 2015) (noting that a "systematic and continuous" presence in the District satisfies § 1782).

*Second*, the discovery sought is "for use in a proceeding before a foreign tribunal."  The testimony at issue will be used in connection with a U.K. criminal proceeding—namely, *The Queen v. Achim Kraemer*—to address the prosecution's contention that the key circumstantial evidence against Mr. Kraemer—Mr. Kraemer's name listed as "logged into" the chatrooms— indicates that he conspired with others to manipulate the Euribor.  Thus, the requested testimony falls squarely within the statute.  *See In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002) ("[Congress] added language in 1996 to clarify that § 1782(a) could be used to provide discovery for use in criminal proceedings abroad.").

*Third*, as a defendant in the foreign criminal proceeding, Mr. Kraemer is plainly an "interested person" within the meaning of § 1782.  *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.").

Accordingly, Mr. Kraemer satisfies all three statutory elements of § 1782, and the Court may order the requested discovery in its discretion.

**II.      The Court Should Exercise its Discretion to Grant the Discovery Sought**

"Once [the] statutory requirements are met, a district court may grant discovery under § 1782 in its discretion."  *Mees*, 793 F.3d at 297.  The Supreme Court has identified several factors that courts may consider in ruling on § 1782 applications: (a) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (b) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or

the court or agency abroad to U.S. federal-court judicial assistance"; (c) "whether the § 1782

request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies

of a foreign country or the United States"; and (d) whether the request is "unduly intrusive or

burdensome." *Intel*, 542 U.S. at 244.  All of these factors weigh in favor of granting Mr.

Kraemer's application.

      *First*, where, as here, discovery is sought from a nonparty to the foreign proceeding, the

need for court-ordered discovery is apparent.  "A foreign tribunal has jurisdiction over those

appearing before it, and can itself order them to produce evidence.  In contrast, nonparticipants in

foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their

evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* at 244.

Bloomberg L.P. is not a party to the U.K. criminal proceeding and its relevant personnel are not

located in the U.K.  Therefore this § 1782 proceeding is the only available means of procuring

the limited discovery that is critical to Mr. Kraemer's defense.

      *Second*, an inquiry "into the nature of foreign proceedings and the 'receptiveness' of the

foreign tribunal to United States court assistance" likewise reveals that discovery should be

granted.  *In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in

a Foreign Proceeding*, 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009).  In evaluating this

factor, courts "should consider only *authoritative proof* that a foreign tribunal would reject

evidence obtained with the aid of § 1782." *In re Kiobel*, 2017 WL 354183, at *5 (S.D.N.Y. Jan.

24, 2017) (quoting *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1100 (2d Cir. 1995)).

Because the foreign proceeding at issue is a criminal trial, the need for relevant and indeed

critical evidence is at its height.  The requested discovery—testimony from a person or persons

knowledgeable about the operation of Bloomberg chatrooms—goes to the heart of Mr.

8

Kraemer's defense.  U.K. counsel for Mr. Kraemer has discussed the testimony sought in this § 1782 application with the court in *The Queen v. Achim Kraemer*, and there is no reason to believe that the U.K. court would in any respect be unreceptive to this testimony or the means of obtaining it.  (Ryan Decl. ¶ 20.)  Thus, this factor weighs in favor of granting Mr. Kraemer's application.

*Third*, Mr. Kraemer's application does not attempt to circumvent any foreign proof-gathering restrictions because no other means exist to compel the testimony sought from Bloomberg L.P.  The prosecution has supplied Mr. Kraemer with three witness statements from Bloomberg employees, but has advised Mr. Kraemer that the prosecution does not intend to call these witnesses at trial.  (Ryan Decl. ¶ 17.)  In any event, these Bloomberg employees provided information that was neither specific to the subject matter of the indictment nor at the level of detail needed for Mr. Kraemer's defense.  (Ryan Decl. ¶ 17.)  Thus, this § 1782 application is the sole means of gathering information that is important to rebutting the criminal charge against Mr. Kraemer in the U.K. criminal proceeding.

*Fourth*, this § 1782 application is neither "unduly intrusive" nor "burdensome" under the Federal Rules of Civil Procedure.  *See Mees*, 793 F.3d at 302 ("[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure.")  Mr. Kraemer does not seek any privileged information.  Nor does Mr. Kraemer seek an excessive amount of discovery.  To the contrary, Mr. Kraemer seeks only limited testimony pursuant to a specific request that is directly relevant to Mr. Kraemer's criminal defense and easily fulfilled by Bloomberg L.P.[2]   Similar requests—seeking limited information

---

[2] Bloomberg L.P., has indicated that, once a valid subpoena is issued by this Court, it will confer with undersigned counsel regarding the time, place, and manner of providing testimony.

related to a specified topic—have been routinely granted in this District.  *See, e.g.*, *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 290 (S.D.N.Y. 2010) (approving a § 1782 application for "all 'Crude' footage that was shot, acquired, or licensed in connection with the movie 'Crude'"), *aff'd*, 629 F.3d 297 (2d Cir. 2011); *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 275 (S.D.N.Y. 2004) (approving a § 1782 application for "documents related to . . . insurance coverage for a single loss on a single day").  Mr. Kraemer's application is neither "unduly intrusive" nor "burdensome".

As set forth above, all four discretionary factors weigh in favor of granting Mr. Kraemer's § 1782 application, and the Court should exercise its discretion to do so.

**III.      The Court Should Grant Mr. Kraemer's Application *Ex Parte***

The Court should grant Mr. Kraemer's application *ex parte*.  As the Second Circuit has repeatedly recognized, "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.  The respondent . . . can later challenge any discovery request by moving to quash pursuant to [the] Federal Rule[s] of Civil Procedure."  *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012); *see In re Hornbeam Corp.*, 2018 WL 416486, at *2 (2d Cir. Jan. 16, 2018) ("[T]his court has decided appeals from motions to quash *ex parte* § 1782 subpoenas without identifying any impropriety in the *ex parte* nature of the § 1782 application."); *In re O'Keeffe*, 650 F. App'x 83, 85 (2d Cir. 2016); *In re Sargeant*, 2017 WL 4512366, at *7 n.1 (S.D.N.Y. Oct. 10, 2017).  Given this well-established procedure, there is no prejudice to Bloomberg L.P. if Mr. Kraemer's § 1782 application is granted *ex parte*.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Kraemer respectfully requests the Court endorse the

Proposed Order annexed to the Petition as Exhibit A, which grants leave, pursuant to 28 U.S.C.

§ 1782, to serve the subpoena annexed to the Petition as Exhibit B.


Dated: February 12, 2018
      New York, New York

s/  Richard F. Albert

Richard F. Albert
Stephen Ehrlich
MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600
Fax: (212) 856-9494
ralbert@maglaw.com
sehrlich@maglaw.com

*Counsel for Petitioner Achim Kraemer*

11